UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UTILITY CONTRACTORS ASS'N ) <br> OF NEW ENGLAND, INC., ) <br> W. WALSH COMPANY, INC., ) <br> and RODNEY ELDERKIN, ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> CITY OF FALL RIVER, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 10-0994 |

## AFFIDAVIT OF CHRIS WALSH

I, Chris Walsh, hereby depose and state:

1. I am the Vice President/Project Manager of W. Walsh Co. ("W. Walsh"), Inc. I have been in this position for ten (10) years. I have personal knowledge of all things stated herein.

2. W. Walsh is a specialty utility contractor. W. Walsh has thirty-five (35) years of experience in providing turnkey pipeline construction services.

3. W. Walsh has been a member of UCANE for approximately thirty (30) years. I personally have been on the Board of Directors since at least 2004, and I have served in the following offices at UCANE:

    a. President elect – present;

    b. Treasurer - 2008 to present; and

    c. Secretary - 2006 to 2008.

4. All UCANE contractors perform public work. The majority of the public work involves laying sewer and water pipes under the street. In order to lay pipes, construction companies typically work in crews of five or six. The work requires the use of:

    a. An excavator operator;

    b. A front end loader operator;

    c. Two pipe layers; and

    d. A foreman.

5. Laying pipe necessitates working in narrow trenches below street grade on active streets and in confined spaces. The work is dangerous and failure to perform the work properly could result in injuries and fatalities. Unqualified Fall River residents could pose a danger to themselves, co-workers, and the public.

6. The employees of W. Walsh have acquired, through experience, the proper skills and knowledge for performing this work safely and efficiently. If the work is not done properly, it could result in damage, requiring re-excavation of the street and re-laying pipe. With gas utilities, errors can result in explosions.

7. If W. Walsh is forced to hire stranger residents of Fall River in lieu of its own experienced, qualified and trusted employees who understand how to perform this work efficiently and safely, it could endanger W. Walsh's workers and the public.

8. In addition, if W. Walsh is required to hire workers from Fall River, it will not be familiar with their level of experience or qualifications. Without knowing this information, it is impossible to estimate their productivity. Since public work is awarded to the low, responsible eligible bidder, not knowing the level of productivity of a crew

that is unfamiliar with the operations because it is made up of stranger Fall River residents makes it impossible to properly estimate the cost of the bid, and being prudent, may cause W. Walsh to over-estimate its expected labor costs, causing it to lose the bid.

9. Furthermore, in the event W. Walsh were forced to hire stranger Fall River residents, and it already had a full compliment of employees on its payroll, W. Walsh would either be forced to layoff valued W. Walsh employees and hire the stranger Fall River residents, or carry the extra workers. If a competitive contractor happened to have Fall River residents already on its payroll sufficient in number to meet the Fall River residency requirement, that contractor would not have the foregoing problems and would be at a competitive advantage.

10. Similarly, if W. Walsh is forced to comply with apprenticeship requirement in the Fall River Ordinance, it will be forced to hire a Fall River resident apprentice. Based upon current market conditions and unemployment, W. Walsh (like other UCANE members) is not in need of apprentices when journeymen are readily available. Further, when an apprentice fulfills all of the requirements of the apprenticeship program and is no longer considered an apprentice, W. Walsh would be required to hire a new Fall River resident apprentice to maintain compliance with the Ordinance. Due to the current market conditions and lack of additional work available, W. Walsh would not be able to maintain the employment of the former apprentice, now journeyman, and hire a new apprentice. More than likely, W. Walsh would have to layoff the former apprentice.

11. UCANE members are primarily small companies. The apprenticeship requirement of the Fall River Ordinance is extremely difficult for small companies to

maintain. As a result, the Fall River Ordinance places smaller construction companies at a distinct, competitive disadvantage if they were to bid on Fall River projects. More likely, they would be unable to comply with the Ordinance. I do not believe W. Walsh can comply with the apprenticeship component of the Ordinance, especially with respect to the 3 year graduation rate.

12. W. Walsh's profitability is also dependent upon the company's ability to hire experienced and qualified employees. If W. Walsh is forced to hire inexperienced employees because they are from Fall River over more qualified, experienced employees who are not residents of Fall River, it will undermine efficiency, and endanger W. Walsh Company's economic viability.

I declare, under penalty of perjury, that the foregoing is true and correct.

_____
CHRIS WALSH

Dated: October 29, 2010

891387

## CERTIFICATE OF SERVICE

    I, Richard D. Wayne, hereby certify that on November 1, 2010, I served an electronic copy of the foregoing document on counsel through the United States District Court ECF filing system.

                                        /s/ Richard D. Wayne
                                        Richard D. Wayne