UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10994-RWZ

UTILITY CONTRACTORS ASSOCIATION OF NEW ENGLAND, INC.,
W. WALSH COMPANY, INC.,
and RODNEY ELDERKIN

v.

CITY OF FALL RIVER

ORDER

October 4, 2011

ZOBEL, D.J.

Utility Contractors Association of New England, Inc. ("UCANE"), W. Walsh Co., Inc., ("Walsh") and Rodney Elderkin brought suit against the City of Fall River ("Fall River" or "the City") for a declaratory judgment that certain provisions of the Fall River Responsible Employer Ordinance ("2010 REO") violate the Constitutions of the United States and the Commonwealth of Massachusetts, as well as federal and state statutes. Plaintiffs invoke 42 U.S.C. §§1983 and 1988 and Mass. Gen. Laws c. 231A.

The matter is before me on plaintiffs' motion for summary judgment.

## I. Introduction

According to the complaint, UCANE is a non-profit corporation that represents hundreds of contractors, materialmen, suppliers and associate members who are principally engaged in public construction projects in the Commonwealth of

1

Massachusetts and other New England states. Walsh is a construction contractor and member of UCANE; Rodney Elderkin is a citizen of Rhode Island and is employed by Walsh as a construction worker. The members of UCANE perform construction worth hundreds of millions of dollars annually.

Defendant City of Fall River ("Fall River") is a municipality within the Commonwealth of Massachusetts.

On April 15, 2010, Fall River passed the 2010 REO. That ordinance established certain mandates that contractors must meet to bid on construction projects funded by Fall River or federal grants or loans. Among the relevant provisions of the 2010 REO are the residency, apprenticeship, and health and welfare and pension plan provisions.

The residency provisions, Sections 2a(iv) and 2-945(a), require that 100% of the apprentices and 50% of all other workers for any construction project be Fall River residents.

The apprenticeship provisions, Sections 2a(iii) and (iv), require all contractors to maintain and participate in an active apprentice program that must have operated without suspension for at least three years prior to the bid date and which must have graduated at least two apprentices per year per trade for the same period.

Finally, Section 2a(v) requires contractors to furnish a pension/annuity plan for all employees on the project, and bidders and subcontractors to furnish, at their expense, hospitalization and medical benefits for all their employees employed on the project.

Plaintiffs assert that:

(1) the residency provisions violate the Privileges and Immunities clause of the United States Constitution and the due process and equal protection clauses of the Massachusetts Constitution;

(2) the apprenticeship, health and pension provisions are preempted by ERISA;

(3) the residency, apprenticeship, health and pension provisions violate the Home Rule Article of the Massachusetts Constitution which prohibits regulation of the private employer-employee relationship without statutory authority;

(4) the apprenticeship provisions of the 2010 REO violate Massachusetts public bidding laws; and

(5) the health care provisions of the 2010 REO violate Massachusetts prevailing wage laws.

The complaint alleges UCANE members bid on public works projects throughout Massachusetts including Fall River. Some UCANE members do not meet the residency requirements, do not have qualifying apprenticeship programs, or do not provide medical or pension benefits as required by the 2010 REO. Walsh bids on projects subject to the 2010 REO. Mr. Elderkin is an employee of Walsh but is not a resident of Fall River. The complaint alleges that as a result of the 2010 REO, Walsh, despite being ready and able, is disqualified from working on publicly-funded Fall River construction projects and did not bid on a certain dam project thus harming Elderkin by denying him the opportunity to perform work on this project and others.

## II. Mootness

Defendant has included in its opposition papers the affidavit of Assistant City Clerk Ines Leite which states the Fall River city council, on October 12, 2010, repealed the 2010 REO and reverted back to an earlier provision (the "Reenacted REO"), which

had been approved in May 2000. This change, defendant suggests, moots plaintiffs' attack on the residency and pension/annuity provisions of the 2010 REO.

In Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Fla., 508 U.S. 656 (1993), an association of general contractors brought action against the City of Jacksonville, Florida (and others), challenging, as unconstitutional, an ordinance that provided additional funding to minority contractors. Id. at 658-659. While the case was on appeal, Jacksonville repealed the challenged ordinance and replaced it with a similar ordinance. Id. at 660. Respondents then moved to dismiss the case on mootness grounds arguing that a live controversy no longer existed. In denying respondents' mootness argument, the Court cited to its holding in City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982), noting it is a "well settled rule that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." Id. at 662. The Court found that "[t]here is no mere risk that Jacksonville will repeat its allegedly wrongful conduct; it has already done so," and rejected the notion that defendants should be permitted to "moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect." Id.

Here, as in City of Jacksonville, a municipality is arguing mootness after repealing a challenged contractor ordinance and replacing it with a similar one. Defendant's arguments are the same as those advanced by defendant in City of Jacksonville, and they fail for the same reason. Fall River's voluntary cessation of potentially unconstitutional conduct does not deprive this court of the power to

4

determine the legality of the practice. Further, there is strong reason to believe that the 2010 REO will re-emerge in substantially similar form and therefore an imminent harm exists to plaintiffs. Plaintiffs submit several DVDs (and an affidavit summarizing their contents) of city council meetings where several council members discussed the repeal of the 2010 REO and suggested a redrafted version was a priority and in the works.[1] (Docket ## 14, 15 Exs. L-N.) See Oriental Health Spa v. City of Fort Wayne, 864 F.2d 486, 491 (7th Cir. 1988) (videotape of city council proceedings properly considered in deciding motion for summary judgment under public record exception to the hearsay rule (Federal Rule of Evidence 803(8))).

The challenge to 2010 REO is not moot.

**III. Standard**

Summary judgment will be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation marks omitted).

Fall River opposes summary judgment for lack of standing and on the merits.

---

[1] The meeting recordings reflect (1) comments from Jim Pomento, a local union member who stated that the Office of the Corporation Counsel was in the process of drafting a new 2010 REO; (2) discussion where Councilman Poulin referenced a document that stated the Mayor's administration intended to redraft the 2010 REO; and (3) comments from Councilman Ray Mitchell expressing his concern that the 2010 REO did not need to be repealed as it was "throwing the baby out with the dirty water." (Docket # 24.)

**IV. Analysis**

    **A. Standing**

        **1. Privileges and Immunity Standing**

The parties agree that Walsh did not bid on the dam project in Fall River after the 2010 REO was repealed, and that pursuant to a stipulation in this court, the 2010 REO has not been enforced. Defendant asserts plaintiffs lack standing as a result.

The fact that Walsh did not actually bid on the Dam Project is irrelevant. In the bidding context, "'[i]njury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract." City of Jacksonville, 508 U.S. at 657 (1993). Here, Walsh and Elderkin assert that because of the 2010 REO requirements, they were not able to compete fairly in the Fall River bidding process.

One June 23, 2010, shortly after the 2010 REO was implemented, the plaintiffs filed the complaint together with a request for an injunction. Defendant stipulated not to enforce it pending further order of the court (Docket # 6). This voluntary action on the part of defendant does not defeat plaintiffs' standing. A party "who must comply with a law or face sanctions has standing to challenge its application and therefore a party need not show that the law is being enforced or will be enforced." Hays v. City of Urbana, Ill., 104 F.3d 102, 103 (1997).

Accordingly, plaintiffs have standing.

        **2. ERISA Standing**

Defendant also argues that plaintiffs may not challenge the health plan

6

requirement[2] of the 2010 REO because plaintiffs are not ERISA plan "participants" or "beneficiaries" as required by the civil enforcement section of ERISA (29 U.S.C. § 1132). However, plaintiffs do not bring an action or request relief under the civil enforcement section of ERISA. Importantly, they are not participants or beneficiaries requesting relief "under" ERISA. Plaintiffs simply claim that certain provisions of a municipal ordinance are unconstitutional and invalid because the provisions harm them and are preempted by federal law (in this case, ERISA). The fact that plaintiffs invoke the explicit preemption language of Section 514 of ERISA does nothing to negatively impact their standing, as plaintiffs are requesting injunctive and declaratory relief based on principals of federal supremacy and preemption law.

Because Walsh and Elderkin would have to comply with the 2010 REO if they wished to bid and work on Fall River construction projects, they have standing to challenge its application. Because at least one of its members has standing (i.e. Walsh) to bring suit, UCANE has associational standing to bring suit (for all claims) since the present action also raises issues germane to UCANE's function as a construction trade association, and participation from the members is not necessary for the court to issue relief. Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977) (trade group has associational standing to sue when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim

---

[2] The ruling in this section also applies to the 2010 REO pension and apprentice provisions.

asserted nor the relief requested requires the participation of individual members in the lawsuit).

Since plaintiffs have standing, I now turn to the merits, the alleged constitutional violations and preemption.

**B. Violations of the Privileges and Immunity Clause of the United States Constitution**

**1. The Residency Provisions (§§ 2-945(a) and 2a(iv) of the REO)**

Section 2-945 of the 2010 REO requires in relevant part:

> on any construction project funded in whole or in part by city funds, or funds from a federal grant or loan … residents of the city … shall be given preference in hiring on a one-of-every-two ratio, after the employer's foreman....

Section 2(iv) of the 2010 REO requires in relevant part:

> any bidders or subcontractors … awarded a contract … shall hire qualified residents of the City of Fall River in filling the apprentice to journeyman ratio for each trade prescribed therein

The Privileges and Immunities Clause of the United States Constitution states: "The citizens of each state shall be entitled to all privileges and immunities of citizens in several states." (U.S. Const. art. IV, § 2, cl. 1.) "The Clause is designed to prevent the discriminatory treatment of citizens from other states … [to avoid] economic Balkanization … [by keeping] states from adopting highly protectionist economic policies. The Constitution protects nonresidents from economic discrimination so that the nation may function as a single economic union." A.L. Blades & Sons, Inc. v. Yerusalim, 121 F.3d 865, 869-870 (3rd Cir. 1997) (internal citations omitted). The word "states" in the Clause is construed broadly and its protections extend equally to

8

municipal residents. United Bldg. and Construction Trades Council of Camden County v. Mayor and Council of City of Camden, 465 U.S. 208 (1984) (fact that "ordinance is a municipal, rather than a state, law does not place it outside the [] scope [of the Privileges and Immunities Clause]… a municipality is merely a political subdivision of the State, and what would be unconstitutional if done directly by the State can no more readily be accomplished by a city deriving its authority from the State.").

The Privileges and Immunities Clause only prohibits discriminatory acts that satisfy a two-step test: (1) first, the discriminatory act must be shown to impair one of the privileges protected under the Clause; (2) next, the burden shifts to the government, here Fall River, to establish that it had a substantial reason for the difference in treatment and that the discrimination bore a substantial relationship to its objectives. Toomer v. Witsell, 334 U.S. 385, 396 (1948); Supreme Court of Virginia v. Friedman, 487 U.S. 59, 64-65 108 S.Ct. 2260, 101 L.Ed.2d 56 (1988).

Fall River, apparently in reliance on mootness, does not advance any substantial justification for the discriminatory ordinance. Therefore, I need only address the first part of the inquiry, namely, whether the municipal residency requirements in the 2010 REO burdened a recognized protection under the Privileges and Immunities Clause.

Sections 2-945 and 2(iv) of the 2010 REO requires any prospective bidder on Fall River construction projects to staff its team so that 100% of the apprentices and 50% of all other workers are Fall River residents. This essentially requires that the majority of all workers on every Fall River job be residents. Such a scheme puts

9

UCANE members that do not employ extensive quantities of Fall River residents at a competitive disadvantage – they will have to expend time, effort and resources recruiting Fall River employees prior to bidding on a Fall River construction project. Therefore, any contractor who already enjoys a high margin of Fall River employees will have an unfair economic advantage since it will not have to engage in further recruitment efforts.

Such municipal residency requirements implicate the right of workers, such as Elderkin, to be productive and find suitable work. There is a "fundamental right to employment, where the employee is hired by a private employer who receives a government contract to work on a public project." A.L. Blades, 121 F.3d at 871; Connecticut ex rel. Blumenthal v. Crotty, 346 F.3d 84, 97 (2d Cir. 2003) ("pursuit of a livelihood, [is] a fundamental right within the purview of the Privileges and Immunities Clause"); O'Reilly v. Board of Appeals for Montgomery County, Md., citing Camden, 942 F.2d 281, 284 (4th Cir. 1991) ("the pursuit of a common calling is one of the most fundamental of those privileges protected by the Clause.").

Because the 2010 REO residency requirements impede a fundamental right under the Privileges and Immunities Clause and Fall River does not offer any justification, the Toomer test is satisfied, and as a matter of law the residency requirement is invalid. See O'Reilly, 942 F.2d at 284 (invalidating county regulation requiring taxi cab drivers to be familiar "with the geographical area to be served" before they could receive a passenger license).

**C. ERISA Preemption**

10

ERISA preempts "any and all State laws insofar as they may now or hereafter "relate to" any "employee benefit plan" that is not otherwise exempt. 29 U.S.C. § 1144(a). An "employee benefit plan" is a plan that is "established or maintained by an employer … for the purpose of providing for its participants or their beneficiaries (29 U.S.C. § 1002 (1)), medical … disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services." 29 U.S.C. § 1002 (1)(a). An "employee benefit plan" also means "any plan, fund, or program … established or maintained by an employer … that by its express terms … (i) provides retirement income to employees or (ii) results in a deferral of income … for periods extending to the termination of covered employment or beyond." 29 U.S.C. § 1002 (2).

"[E]xplanation for the broad preemption provision is clear: By preventing states from imposing divergent obligations, ERISA allows each employer to create its own uniform plan, complying with only one set of rules (those of ERISA) and capable of applying uniformly in all jurisdictions where the employer might operate." Simas v. Quaker Fabric Corp. of Fall River, 6 F.3d 849, 852 (1st Cir. 1993)

Historically, the Supreme Court has interpreted the ERISA preemption clause broadly. See, e.g., FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990) ("The preemption clause is conspicuous for its breadth.") However, beginning in the mid- to late-1990s the Supreme Court began to rein-back its broad ERISA preemption jurisprudence, suggesting heightened scrutiny is appropriate when construing the statutory phrase "relates to" in determining whether a plan is an "employee benefit plan" under ERISA.

11

New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655-56 (1995) (finding "governing text of ERISA is clearly expansive... [i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course ... [instead, one must look to] Congress's intent to establish the regulation of employee welfare benefit plans as exclusively a federal concern."); California Div. of Labor Standards Enforcement v. Dillingham Construction, 519 U.S. 316 (1997) (the Court stated "to determine whether a state law has the forbidden connection, we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive[…] as well as to the nature of the effect of the state law on ERISA plans") (citations omitted).

      Here however, the court need not engage in a prolonged "relate[s] to" analysis because the pension, healthcare and apprenticeship provisions of the 2010 REO are all mandatory requirement provisions.[3] The contested provisions all specifically mandate that Fall River contractors provide various employee benefits or operate employee benefit programs. There is little doubt that an explicit decree to put into existence a benefit program "relate[s] to" an "employee benefit plan" for ERISA preemption purposes. Travelers itself recognized as much. Travelers, 514 U.S. at 658 (citing with approval Supreme Court precedent where "ERISA pre-empted state laws

---

[3] Cf. Turner v. Fallon Community Health Plan, Inc., 127 F.3d 196, 199 (1st Cir. 1997) (recognizing the Supreme Court has "set some new limits on preemption" but declining to conduct "relate to" analysis; finding "[i]t would be difficult to think of a state law that 'relates' more closely to an employee benefit plan than one that affords remedies for the breach of obligations under that plan.").

12

that mandated employee benefit structures or their administration".) Other cases are in accord. Simas, 6 F.3d at 852 (1st Cir. 1993) ("a state statute that obligates an employer to establish an employee benefit plan is itself preempted even though ERISA itself neither mandates nor forbids the creation of plans."); Arizona State Carpenters Pension Trust Fund v. Citibank, citing Travelers, 125 F.3d 715, 723 (9th Cir. 1997) (there are "three areas in which ERISA was intended to preempt state law;" the first includes "state laws that mandate employee benefit structures or their administration") (internal citations omitted); Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1469 (4th Cir. 1996) (same) (all emphasis added).

### 1. Health and Pension Provisions of the 2010 REO (§ 2a(v))[4]

Section 2a(v) of the 2010 REO requires in relevant part that:

> The bidder and all subcontractors under the bidder must furnish at their expense, hospitalization, pension/annuity and medical benefits for all their employees employed on the project ….

Section 20a(v) of the 2010 REO is clearly a requirement that is "maintained for the purpose of providing [] its participants" with "medical, surgical, or hospital care," and therefore is an "employee benefit program" under ERISA. Mandatory medical benefits programs are preempted by ERISA. Standard Oil Co. of California v. Agsalud, 442 F. Supp. 695, 711 (N.D. Cal. 1977), aff'd, 633 F.2d 760 (9th Cir. 1980) aff'd mem., 454 U.S. 801 (1981) (finding Hawaii state law mandating employers provide comprehensive prepaid health care to employees preempted by ERISA); Catholic Charities of Maine, Inc. v. City of Portland, 304 F.Supp.2d 77, 92 (D. Me. 2004)

---

[4] Section 1(A)(4) of the Reenacted REO is substantially the same provision.

(holding Maine ordinance requiring city funded employers to provide health and employment benefits to domestic partners preempted under ERISA); District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 127-129 (1992) (finding D.C. law requiring employers to provide health insurance to worker compensation recipients preempted by ERISA).

### 2. Apprenticeship Provision[5] of the 2010 REO (§ 2a(iii))[6]

Section 2a(iii) of the 2010 REO requires in relevant part that:

> bidder and all subcontractors … must maintain or participate in a bona fide active apprentice training program [under Massachusetts law]… for each apprenticeable trade or occupation represented in their work … that is approved by… the department of labor … and must abide by the apprentice to journeymen ratio for each trade prescribed therein… [the] apprentice training program [must have] operated without suspension for at least 3 years prior to the bid date… and [must have] completed or graduated at least 2 apprentices per year per trade for the same period….

Here, Section 2a(iii) of the 2010 REO improperly mandates the use of an apprenticeship program for all bidders and subcontractors. Defendant argues that the Supreme Court's holding in Dillingham, supra, is controlling and teaches against a finding of preemption. In Dillingham, the Supreme Court declined to preempt a California state law that allowed contractors to pay lower wages to participants of state-approved apprenticeship programs.

However, the law construed in Dillingham was an alteration of a "prevailing

---

[5] Although plaintiffs label Section 2(IV) as an apprenticeship provision – the court considers it a residency provision because, although the text does mention "apprentices," the provision's purpose is to impose residency requirements on the hiring of apprentices.

[6] Section 1(A)(3) of the Reenacted REO is substantially the same provision.

14

wage" law that had only a tangential affect on actually regulating apprenticeship programs. Id. at 332. As defendant partially quotes in its opposition, Dillingham expressly recognized that "[n]o apprenticeship program is required by California law to meet California's standards … apprenticeship programs that have not gained [] approval may still supply public works contractors with apprentices … [the statute at issue] alters incentives but does not dictate the choices facing ERISA plans." Id. at 332. (Docket # 20 at 10).

By contrast, Fall River is mandating an apprenticeship program that not only requires bidders and contractors to operate such a program, but also requires approval by the state, and that the program existed for at least three years prior to any bidding. Such an apprenticeship program mandate is preempted by ERISA. See Minnesota Chapter of Associated Builders and Contractors, Inc. v. Minnesota Dept. of Public Safety, 267 F.3d 807, 814-815 (8th Cir. 2001), cert. denied, 535 U.S.1096 (2002) (finding law allowing "only licensed journeymen and registered apprentices [to] perform fire protection work" preempted by ERISA and unaffected by Dillingham, where purpose of apprenticeship program was not related to merely providing "economic incentive[s]").

### 3. Preemption Is Not Saved By the Fitzgerald Act

Defendant argues that even if the court finds that the apprentice program mandate relates to an ERISA plan, it is saved by Section 514(D) because ERISA saves laws to the extent that preemption would modify or impair another federal statute. Here, it argues the "Fitzgerald Act," 29 U.S.C. § 50, which generally promotes the welfare of

15

apprentices, would be substantially impaired. This precise argument was raised and rejected in <u>Hydrostorage, Inc. v. Northern California Boilermakers Local Joint Apprenticeship Committee</u>, 685 F.Supp. 718, 721 (9th Cir. 1989). In <u>Hydrostorage</u>, the court found that neither the Fitzgerald Act nor the statute at issue in the case contained any mechanisms of federal enforcement and therefore were not in contradiction. The court further found that the core objective of the Fitzgerald Act was merely to implement standards for the registration of apprenticeship programs, and as such really had no bearing on the statute at issue.

The issue in this case is identical. Defendant's Fitzgerald Act argument fails.

### 4. Fall River Was Not Acting As a Market Participant

Next, defendant argues that even if the court finds that the apprentice and health mandates "relate to" an ERISA plan, and would otherwise be preempted, the City's activities fall under the "market participant" exception. Fall River urges the court to apply Fifth Circuit precedent holding that the market participant doctrine applies to ERISA preemption either when the activity is (1) essentially proprietary; or (2) when its scope is so narrow that it defeats any inference that the challenged action was aimed at policy, not proprietary, goals. <u>Cardinal Towing & Auto Repair Inc., City of Bedford</u>, 180 F.3d 686, 693 (5th Cir. 1999).

The Supreme Court has stated "[t]he 'market participant' doctrine reflects the particular concerns underlying the Commerce Clause, not any general notion regarding the necessary extent of state power in areas where Congress has acted" (i.e. ERISA). <u>Wisconsin Dep't of Industry, Labor and Human Relations v. Gould, Inc.</u>, 475 U.S. 282,

16

289 (1986). It has also not yet addressed whether the market participant exception can be raised as a bar to preemption in the context of ERISA, <u>Council of City of New York v. Bloomberg</u>, 6 N.Y.3d 380, 394 (2006), nor has the First Circuit. As such, it is not clear that defendant can avail itself to this exception.

However, when the exception is applied (<u>e.g.</u>, dormant commerce clause cases), the state entity must directly participate in the market by purchasing goods or services. <u>Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.</u>, 498 F.3d 1031 (9th Cir. 2007). "If the state's direct participation in the market is 'tantamount to regulation' the market participant doctrine will not exempt the state's action from preemption." <u>Gould</u>, 475 U.S. at 289. Defendant's assertion that Fall River's imposition of "apprenticeship" and "healthcare" programs is akin to purchasing goods and services in the marketplace is unconvincing. Broad and varied municipal mandates, such as these, are tantamount to regulations.

Further, even if the <u>Cardinal Towing</u> analysis is applied, defendant has not sufficiently established that it was acting as a market participant and not a regulator. First, defendant does not advance any factual support for its market participant theory – it fails to adduce evidence (affidavits, city council transcripts, etc.) describing the City's true purpose of these regulations – their relationship, if any, to market economics, and/or any pecuniary interests motivating their passage. Second, the sweeping nature of the multiple and independent requirements of the mandates is strong evidence that they are not narrow in scope or motivated by a specific proprietary interest. Thus, even if the <u>Cardinal Towing</u> analysis is applicable here, Fall River has not satisfied either

prong.

## V. Conclusion

For the preceding reasons, plaintiffs' summary judgment motion (Docket # 11) is ALLOWED. Judgment may be entered declaring invalid Sections 1(A)(4) and 1(A)(3) of the Reenacted REO, and Sections 2a(iii), 2a(iv), 2a(v) and 2-945(a) of the 2010 REO, or any provisions substantially identical, and enjoining enforcement thereof. The parties shall jointly submit a proposed form of judgment within 20 days of this order.


   October 4, 2011                                        /s/Rya W. Zobel

      DATE                                                RYA W. ZOBEL
                                                        UNITED STATES DISTRICT JUDGE